## TERRITORY OF HAWAII *v.*
## CASIMIRO PASCUA AND BENNY MANZANO.

### No. 3086.

ARGUED MAY 7, 1957.                    DECIDED MAY 21, 1957.

RICE, C. J., STAINBACK AND MARUMOTO, JJ.

OPINION OF THE COURT BY RICE, C. J.

The defendants, Casimiro Pascua and Benny Manzano, were convicted by a jury in the circuit court, first circuit, Territory of Hawaii, Honorable Carrick H. Buck, first judge, presiding, were sentenced on the 27th day of March 1956, and on the 25th day of May, 1956, procured a writ of error from this court, as provided by chapter 186 of the Revised Laws of Hawaii 1945, now chapter 212, Revised Laws of Hawaii 1955.

Upon information of the public prosecutor, defendants were severally arraigned and charged in open court that they:

"* * * at Honolulu, City and County of Honolulu,

Territory of Hawaii, on or about October 30, 1953, did participate in a gambling game, to wit: 'odd and even coin game' wherein lawful currency of the United States of America was won or lost and did then and there and thereby violate the provisions of Sec. 11343, R. L. H. 1945."

To the charge they severally pleaded "not guilty" and demanded trial by jury. In due course they were together put on trial which resulted in a verdict of *"Guilty* as charged" as to each defendant.

At the conclusion of the case for the prosecution, the defendants rested and their counsel made a motion that the jury be directed to "find a verdict of not guilty." The grounds stated for the motion were, "that there is a fatal variance between the proof and the allegations; further that there has been no evidence showing the commission of the crime of gambling or any crime against the laws of the Territory."

After argument, the court denied the motion and an exception was noted.

The case was submitted on the evidence presented by the prosecution. Neither of the defendants testified, nor was any evidence offered on their behalf.

The specification of errors relied upon enumerates several, but because of our conclusion as to the one hereinafter discussed, we deem it unnecessary to pass upon the others.

We refer to the specification that:

"The court should have directed the jury to return a verdict of not guilty as to each defendant because * * * there was no evidence to support the charge."

We have carefully considered the evidence presented by the prosecution and in reading the transcript of oral testimony given by the witnesses have assumed the credibility thereof. Summarized, the testimony was as hereinafter recited.

Witness William Bains-Jordan, manager of the Aiea Branch of the Bank of Hawaii testified — out of turn — relative to the savings account of one Matsuo Mizusawa and, over the objection of counsel for defendants on the ground that it was "incompetent, irrelevant and immaterial, not properly identified for this case" a ledger sheet, showing the activities of Matsuo Mizusawa's account, including a withdrawal of $1,000 by the latter on October 30, 1953, was admitted in evidence as "Prosecution's Exhibit No. 1."

Matsuo Mizusawa, the second witness called by the prosecution, testified that he knew a person by the name of Benny Manzano and identified one of the defendants as that person; that he met the latter for the first time on October 30, 1953, at about nine o'clock in the morning; that the witness (Mizusawa) went to the house of his friend Aspili, with him walked across Liliha street and met Benny Manzano at Liliha and King street and a conversation ensued; thence, at his invitation they all went in Manzano's car to an apartment building at Rodgers Airport, were invited by Manzano to do so and entered it, being told by Manzano that his wife would be returning home. After a wait of two hours without the wife appearing, the defendant Casimiro Pascua — identified by the witness, in the courtroom — came in. After some conversation Manzano asked Pascua what the latter had in a small cloth bag, and the latter revealed the contents, a big bundle of money. Manzano asked Pascua, "How much you got in there?" Responding to that question Pascua said, "$10,000.00." Pascua then asked "You guys gamble" and the witness (Mizusawa) said, "No, we don't gamble." Pascua then said "I gamble" and thrice said, "You guys are big gamblers." Thereafter Manzano came over to the witness (Mizusawa), patted the latter on the back and whispered "Big gambler" and kept repeating words to that

effect and patting the witness (Mizusawa) on the back until the latter finally said, "Okay, big gambler." Whereupon defendant Manzano said to defendant Pascua, "We all big gambler," gave witness a pat on the back and borrowed seven dollars from him, all that he had on his person, in a wallet.

The witness Mizusawa further testified that, after the occurrences above related, defendants Benny Manzano and Casimiro Pascua engaged in a coin game, using a metal cup and two nickels. The following is his description of what took place: Benny Manzano placed on the board the seven dollars borrowed from the witness Mizusawa and Casimiro Pascua put up two thousand dollars. Then Benny Manzano, "he flipped the coin in the can." * * * "he had two coins. The metal cup he turned over, and he flipped the coin inside the metal cup, head and tails. But actually I do not know who is head or tails." * * * "He flipped the coin and he took the cup out, and he told Casimiro [Pascua], 'I won.'" * * * "He take that $2,000.00 and then Casimiro wanted to try once more." * * * "He didn't took it. He placed it on his side, the money." * * * "He slided it to his side (indicating)." * * * "Casimiro told Benny Manzano, 'Go ahead, I like try again; me big gambler.' So he try again. Benny Manzano say, 'okay.' Casimiro throw so much money on the pot. Benny Manzano started arguing. Casimiro say, 'I am big gambler. I got cover lot.' So they went on with the game, and then from there on I didn't pay attention to the game. I turned my face the other way to face Aspili, my friend."

Subsequently, when asked whether he actually saw that there was $2,000.00 in the roll he had said Casimiro Pascua put up, the witness Mizusawa testified to the effect that he saw twenty dollar bills in currency, there was a band around the currency reading "Bank of Hawaii," he saw a 20-dollar bill in currency on the top, but did not see the

bottom, so what he actually saw was one 20-dollar bill.

The third and last witness for the prosecution identified himself as Bien Venido Aspili. He identified the defendant Benny Manzano, in the courtroom; likewise the defendant Casimiro Pascua. Testifying as to the events that occurred down at the airport housing area, on or about October 30, 1953, this witness said of the defendants what is hereinafter quoted.

"When they was at the airport they play the kind with nickels, they play."

* * * "They play the kind. I cannot explain too much, that kind."

"The two nickels they play."

* * *

"It is . . . I cannot tell you, but it was . . . that is the first time I see that kind gambling."

* * *

"They had two nickels and they spun together, then you can select the side you like."

* * *

"Pascua he bet." * * * "He put the money; then he lose." * * * "It is 20-dollar bill."

* * * "On top the table." [Placed there by Pascua.]

"* * * this Japanee boy he bet too, but I never see the money."

* * * "The boy, he bet and lost, but I never see the money."

[Asked what Manzano did] "at the time Pascua lost," [this witness (Aspili) said] "He take the money."

* * * "Take in front of him." (indicating.)

Upon cross-examination the witness Aspili testified he was not a gambler and did not know anything about gambling or what is an odd and even game.

The hereinafter quoted pertinent questions and answers

were, respectively, asked of and given by the said witness Aspili.

Q. "How do you know it was true that they gambled and the Japanese boy bet but you didn't see the money?"

A. "Because he bet."

Q. "How did you know that?"

A. "Because I stayed there."

Q. "You said you don't know anything about gambling?"

A. "Because I go with this Japanese boy."

Q. "What do you mean you go with the Japanese boy?"

A. "I go look for job."

Q. "Yes, but you said you don't know how to gamble?"

A. "I don't know."

Q. "Then how can you tell that what took place there was gambling? You don't know that it was gambling, do you?"

A. "I don't know."

Upon analysis of the testimony, we find that that given by the first witness for the prosecution, William Bains-Jordan, was irrelevant in that it did not in any way relate to the charge against the defendants, or either of them, or their guilt or innocence. Therefore, "Prosecution's Exhibit No. 1" should not have been received in evidence over the objection of counsel for the defendants.

The testimony of the prosecution's second witness, Matsuo Mizusawa, did not disclose that any money or thing of value was actually won or lost in whatever took place between the defendants. Not anywhere in his testimony did the witness Mizusawa say that he saw either defendant take possession of money of the other in such a manner as to show he was doing so to retain it permanently. What was said and done by the defendants, in so far as related

by the witness, might create suspicion in the minds of the jury, but could it be said to be proof beyond a reasonable doubt? No. All was as consistent with a game for fun or — including the talk of "gambling" and being "big gamblers" — with bluffing, or an attempt to impress the witness for fun, or with a purpose. But, however strong, suspicion is not proof sufficient to overcome the presumption of innocence clothing a defendant and will not warrant a conviction. It is distinguishable from and is not circumstantial evidence.

The testimony of the third and last witness for the prosecution, Bien Venido Aspili, was even weaker than that of Mizusawa, for, as he admitted upon cross-examination, he did not know anything about gambling or that what he saw was gambling. He mentioned a Japanese boy and that "this Japanese boy bet too, but I never see the money." The record does not show that he identified the "Japanese boy." If he in fact identified the "Japanese boy," there is no testimony as to how or against whom the latter "bet too."

In order to warrant conviction, facts and circumstances shown must be consistent with each other and with defendants' guilt and inconsistent with any theory of innocence.

Accordingly, we conclude that the evidence did not establish the offense charged and that the trial court erred in not sustaining the motion on behalf of the defendants for a directed verdict of not guilty.

The judgment is reversed, the verdict is set aside, the sentences are revoked, and, in conformity with the opinion of the Supreme Court of the United States in *Sapir* v. *United States*, 348 U. S. 373, and what Mr. Justice Douglas has said in concurring therein, it is ordered that the clerk of this court enter a judgment of acquittal of the defendants.

*Oliver P. Soares* (also on the brief) for plaintiffs in error.

*Ernest Y. Yamane,* Assistant Public Prosecutor, City and County of Honolulu (also on the brief), for defendant in error.